UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD WEINSTEIN, | : |
| Plaintiff, | : Civil Action No. 18-3910 (KM) (MAH) |
| v. | : |
| VIVIAN WEINSTEIN BRISMAN, | : OPINION |
| Defendant. | : |

## I. INTRODUCTION

This civil action instituted by Plaintiff Richard Weinstein against his sister Defendant Vivian Weinstein Brisman concerns allegedly defamatory remarks made by Defendant regarding Plaintiff's theft of valuable artwork. *See* Compl. ¶¶ 2, 8, 13, 19, 25, Mar. 21, 2018, D.E. 1. At issue here are jointly served subpoenas on Lloyd De Vos, Esq. and Ann Pincus Berman, Esq. (the "Nonparties") seeking deposition testimony and the production of documents predominately concerning the affairs of two Curacao private foundations that were organized to provide care to the parties' brother and their mother prior to her death. *See* Decl. of Robert C. Brady in Supp. of Nonparties' Mot. to Quash Pl. and Def.'s Jointly-Served Subpoenas ("Brady Decl."), Ex. A, Oct. 23, 2019, D.E. 41-2; Cert. of Lloyd De Vos in Supp. of Nonparties' Mot. to Quash Pl. and Def.'s Jointly-Served Subpoenas ("De Vos Cert.") Ex. A, Oct. 23, 2019, D.E. 41-3.

The Nonparties have moved to quash the subpoenas on the grounds that they seek irrelevant and privileged information and are unduly burdensome. *See* Mem. of Law in Supp. of Nonparties' Mot. to Quash Pl. and Def.'s Jointly-Served Subpoenas at 1-2, Oct. 23, 2019, D.E. 41-1. The Court has considered the parties' submissions and held oral argument on March 25, 2020. For the reasons that follow, the Nonparties' Motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiff holds himself out as a "passionate art collector" who has bought and consigned art with the assistance of Christie's Auction House in New York City. Compl. ¶¶ 15-16. In the beginning of 2018, Plaintiff was negotiating the sale of several high value paintings when he was provided with unfavorable terms to consummate the transaction. *Id.* ¶¶ 17-18. According to Plaintiff,

> Plaintiff questioned a Christie's employee as to why he was receiving such unfavorable terms for his valuable artwork. Plaintiff was informed that Christie's had been contacted by Defendant by mail and Defendant had falsely informed Christie's that Plaintiff had stolen works of art from his mother. This false information caused Christie's to question doing business with Plaintiff and caused Christie's to only proceed with doing business with Plaintiff on terms that are very favorable to Christie's, and unfavorable to Plaintiff.

*Id.* ¶ 19. Plaintiff denies having stolen art from his mother and alleges that "Defendant's false and defamatory statements have greatly damaged Plaintiff's reputation and has impeded his ability to consign for sale his art collection under favorable terms and has negatively affected the value of his property." *Id.* ¶ 23. Separate from the communications to Christie's, Plaintiff further alleges that Defendant has accused him of stealing property from their father in addition to committing other unspecified "shameful" acts. *See id.* ¶¶ 13-14, 25.

By way of a Complaint filed on March 21, 2018, Plaintiff seeks damages and injunctive relief in connection with a defamation claim and tortious interference claim. *See id.* ¶¶ 24-38. In her Amended Answer, Defendant avers, among other things, that the alleged defamatory statements were true. *See* Am. Answer, Fourth Affirmative Defense, Sept. 14, 2018, D.E. 10. By way of rebuttal, Plaintiff contends that Defendant's statements are in fact false because "[his] siblings, including Defendant, and mother . . . , agreed to reimburse [him] for certain care

expenses—including through the sale of works of art, which are at issue in this action."[1] Decl. of Richard Weinstein in Opp. to Mot. to Quash Subpoenas ("Pl. Decl.") ¶ 4, Nov. 18, 2019, D.E. 46-1.

As the pleadings and filings submitted in support of and in opposition to the Motion to Quash reveal, the instant civil action appears to be part of an ongoing saga concerning disagreements among the Weinstein children pertaining to the care of certain family members and control over valuable assets. The parties, along with their two siblings, Larry and Stephen Weinstein, were born in Lima, Peru. *See* Compl. ¶ 8; De Vos Cert. ¶ 4. Plaintiff continues to reside in Lima where he assisted taking care of Larry, who has significant special needs, and his parents until their respective deaths. *See* Compl. ¶¶ 10, 12; Pl.'s Decl. ¶¶ 3-4. Richard, Vivian, and Steven's relationship soured over the years based on disagreements over their respective contributions towards the care of their parents and Larry, and how to divide up the familial assets upon their parents' deaths. *See* Compl. ¶¶ 11-14; Pl.'s Decl. ¶¶ 3-4, 8.

Two private foundations established in Curacao—which are not referenced at all in the Complaint and are the target of the subpoenas at issue—maintain certain assets for the care of Larry and certain assets originating from the parties' mother, Aida Brodsky Tabac. *See* De Vos Cert. ¶¶ 5-6. The Foundations own their respective assets, which are managed pursuant to the terms of Trust Management Agreements ("TMA"). *Id.* ¶ 8; *see also* Decl. of Jennifer Katz in Opp. to Nonparties' Mot. to Quash ("Katz Decl."), Ex. 3 ¶ 2, Nov. 18, 2019, D.E. 45-1. More

---

[1] Plaintiff, Defendant, and the Nonparties all reference in their briefing a power of attorney and contract that gave Plaintiff the right to sell the artwork and keep the proceeds. *See* Def.'s Mem. of Law in Opp. to Nonparties' Mot. to Quash at 2, 7, Nov. 18, 2019, D.E. 45; Pl.'s Mem. of Law in Opp. to Nonparties' Mot. to Quash at 1-2, Nov. 18, 2019, D.E. 46; Nonparties' Reply Mem. of Law in Supp. of Mot. to Quash at 1, 6, Dec. 9, 2019, D.E. 50. However, those putative documents are not referenced in any party's declarations or certifications submitted in conjunction with the Motion to Quash.

3

specifically, the Raglos Private Foundation ("Raglos") "was established to hold, invest and administer the funds paid in a legal settlement to ensure that Larry would have care for the rest of his life." De Vos Cert. ¶ 5. "The only person entitled to receive funds from Raglos during Larry's lifetime is Larry." *Id.* ¶ 12.

The Abacat Private Foundation ("Abacat") was established "to provide for [Mrs. Brodsky] during her life and thereafter to provide for members of her family thereafter under the provisions contained [in the TMA]." Katz Decl., Ex. 3 ¶ A; *see also* De Vos Cert. ¶¶ 6, 13. The discretion to manage and distribute the assets belongs solely to Abacat. *See* Katz Decl., Ex. 3 ¶¶ 1-3. Presently, Ms. Berman and St. Thomas Corporation Company, whose president is Mr. De Vos, serve as the directors of Abacat and Raglos. *See* De Vos Cert. ¶ 10. Additionally, Mr. De Vos served as Mrs. Brodsky's legal counsel from 2005 until 2017. *Id.* ¶ 3. Mr. De Vos is licensed to practice law in New Jersey and consults with separate counsel from Curacaco, where he does not maintain a license to practice. *See id.* ¶¶ 1, 11.

The longstanding animosity among the siblings "is one of the reasons why Raglos and Abacat were originally established." *Id.* ¶ 17. The siblings have made repeated efforts to obtain information regarding Raglos and Abacat. *Id.* ¶ 20. The sole occasion on which the Foundations complied with the siblings' requests was when Mrs. Brodsky became unable to continue to care for herself. *Id.* ¶ 21.

> At that time, the Foundation[s] provide[d] public deeds of incorporation and the current TMA in effect for each of Raglos and Abacat to inform the Plaintiff, Defendant and Steven that they were not entitled to receive distributions from either foundation. The Foundations also provided two years worth of Abacat bank statements in an attempt to quell unsubstantiated allegations of impropriety.

4

*Id.* Mrs. Brodsky passed away on January 30, 2019. *Id*. ¶ 3. Following her death, "Abacat has attempted to reach an agreement with her children regarding the distribution of assets to each of them." *Id.* ¶ 16. Mr. De Vos has been unable to reach an amicable arrangement with the parties and Steven regarding the division of Abacat's assets. *Id.* Additionally,

> [b]oth Plaintiff and Defendant have each wanted to take control over the assets of the Foundations, both before and after the death of Mrs. Brodsky. Both before and after Mrs. Brodsky's death, the Foundations have denied requests by each of Plaintiff and Defendant to turn over all assets of the Foundations to them, individually.

*Id.* ¶ 18.

According to Plaintiff, he has had "many discussions and correspondences with De Vos and Berman concerning [him] being reimbursed, from both Raglos and Abacat, for expenses [he] advanced" for the care of his parents and Larry. Pl.'s Decl. ¶ 5. Indeed, the Abacat TMA acknowledges that Mrs. Brodsky sought to settle any "intra-family debts among Richard, Steven, and Vivian" prior to the distribution of Abacat's assets. Katz Decl., Ex. 3 ¶ 6. The TMA prescribes that "[i]f the Foundation . . . determine[s] that there are any intra-family debts between Richard, Steven, and Vivian, it shall adjust the shares allocated to each of them to reflect its determination." *Id.* Although that specific determination is not subject to challenge by the children, *see id.*, the TMA further provides that "[t]he Foundation shall consult with each of Richard, Steven and Vivian concerning the distribution of the amounts allocated to them as finally determined," *id.* ¶ 9.

In addition to setting forth the background of the Foundations and familial disputes, Plaintiff and Mr. De Vos's declarations also provide their respective views on the relevance of the targeted documents to the claims at issue. Mr. De Vos avers that

> [t]his subpoena has nothing to do with the allegations in this case. Apparently Plaintiff and Defendant are attempting to use the process of this Court to compel [him] to not follow the requirements of

> Curacao law, the law that governs the obligations under Raglos and Abacat, even though the subject matter of the subpoenas have nothing to do [with] this action. It is a continuation of the efforts of each of the [parties] to obtain the assets of Raglos and Abacat and convert the assets to their own personal use.

De Vos Cert. ¶ 22. With respect to Curacao law, Mr. De Vos attests that he has been advised that non-beneficiaries have "no legal right to information, documents or knowledge about the operation of the foundations," and that "it may be a violation of law to provide any such information to a person who is only potentially entitled to a receive a distribution from a Curacao private foundation." *Id.* ¶ 11. Finally, Mr. De Vos submits that compliance with the subpoena will require him to review fourteen years of documents for relevance and privilege given that he served as Mrs. Brodsky's attorney during the relevant time period. *Id.* ¶ 23. He estimates that it will cost at least $24,000 to complete his review of the document at his suggested billing rate. *Id.*

Plaintiff submits that "Defendant has made the issue of reimbursement, loans and funds coming to and from the Raglos and Abacat foundations or [his] mother an issue in this action." Pl.'s Decl. ¶ 6. Plaintiff also points out that the Nonparties have acknowledged the putative defamatory statements made by Defendant in an email dated March 1, 2018, *id.* ¶ 8, and that De Vos has acknowledged the alleged debts in an email dated December 17, 2016, *id*. ¶ 7. As for the Foundations' records, Plaintiff attests that he "do[es] not have a complete and full accounting of these financial transactions and . . . that the individuals most likely to possess the complete (and possibly only) set of related documents and information are De Vos and Berman." *Id.* ¶ 6. Thus, Plaintiff continues, "a response to the subpoenas at issue is the only way that the parties to this action will get a full accounting of the finances of the foundations." *Id.*

Plaintiff also raises the issue of about the final distribution of Abacat's assets. *See id.* ¶¶ 9-13. Plaintiff notes that they received a letter from the Nonparties dated April 16, 2019,

requesting that the Weinstein children executed a general release and indemnification agreement prior to receipt of their respective funds. *See id.* ¶ 9. Plaintiff attests that

> [u]pon receiving this letter, [he] requested that the Nonparties provid[e] an accounting of the foundations so that [the] siblings could make informed decisions as to whether or not a release should be provided. Nonparties refused to provide an accounting or any detailed information regarding the disbursements of the foundations. There was no dispute as to the apportionment of the assets of Abacat to [his] knowledge, as Nonparties now contend in their motion papers. The assets of Abacat remain undistributed due to Nonparties' refusal to distribute the assets without a general release and indemnification from [the parties and Steven].

*Id.* ¶ 11; *see also* Pl.'s Mem. of Law at 4-5. With respect to Abacat's funds, Plaintiff submits that he has only sought to be reimbursed for expenses related to his mother during her lifetime and that he is currently entitled to a distribution. Pl.'s Decl. ¶ 12. Finally, Plaintiff notes that his attempted removal of the Nonparties was at the direction of his mother and that the money expended in that attempt are relevant to this action insofar as he sought reimbursement for his efforts. *Id.* ¶ 13.

### III. ANALYSIS

The subpoenas at issue seek fifty-six categories of documents. The majority of the categories concern the financial affairs of Abacat, Raglos, and affiliated entities.[2] Specifically, the subpoenas seek documents pertaining to all financial transactions, financial statements, audit files, and formation and management agreements of the various entities, as well as Abacat's distributions to the siblings. *See* Brady Decl., Ex. A ¶¶ 1-25, 35. The next two categories, along

---

[2] The subpoenas also target documents from Whole Wheat LLC, Caritas United, and Solgar Corporation. *See generally* Brady Decl., Ex A. Solgar Ltd. was the original signatory to Abacat's TMA, which "at the time held Mrs. Brodsky's non-Peruvian assets." De Vos Cert. ¶ 9. Whole Wheat LLC is the "legal successor to Solgar Corp." and was the signatory to Abacat's amended TMA. Katz Decl., Ex. 3. "Raglos established Caritas United S.A. . . . to have funds in Peru to pay for Larry's care and Mrs. Brodsky's needs" when Mrs. Brodsky became unable to care for herself. De Vos Cert. ¶ 14. The subpoenas also seek documents concerning the entity DUCAT, which is neither identified in the pleadings nor parties' submissions. *See* Brady Decl., Ex. A ¶¶ 47-48.

7

with the final category, appear to be catch-all provisions; they target "[a]ll Documents concerning Abacat," *id.* ¶ 26, "[a]ll Documents concerning Raglos," *id.* ¶ 27, and "[a]ll documents relating to this Litigation." *Id.* ¶ 56. The categories that follow seek "[a]ll communications (including Documents) between" the Nonparties and various family members regarding the disposition of Mrs. Brodsky's assets, Abacat's debts, and the siblings and entities generally. *Id.* ¶¶ 28-32, 47. The subpoenas then request all documents concerning the Nonparties' compensation and their assertions that Mrs. Brodsky acted under duress. *Id.* ¶¶ 33-34. The subpoenas further request "all Documents concerning [Plaintiff's] alleged unauthorized use of, conversion or theft of property from Mrs. Brodsky," *id.* ¶ 36; and "[a]ll Documents concerning the transfer of ownership, possession, and/or sale of [Mrs. Brodsky's] artwork to" her children, *id.* ¶¶ 37-40. The next six categories pertain to transfer of real property and certain specific real estate transactions. *Id.* ¶ 41-46. Categories Forty-Nine and Fifty seek "[a]ll Documents concerning the transfer" of money and property from Mrs. Brodsky to the four children. *Id.* ¶¶ 49-50. Finally, Categories Fifty-One through Fifty-Five concern "[a]ll documents concerning loans" to the four children and Mrs. Brodsky. *Id.* ¶¶ 51-55.

On a timely motion,[3] a court must quash or modify a subpoena that subjects a person to undue burden or requires the disclosure of privileged or protected information in the absence of an

---

[3] The Nonparties were served with the subpoenas on August 10, 2019, and August 21, 2019, with return dates of August 27, 2019, and August 28, 2019, respectively. *See* De Vos Cert., Ex. A (De Vos Subpoena); Brady Decl., Ex A (Pinciss Subpoena). The Nonparties aver that they met and conferred with the parties regarding the subpoenas and that the parties' refusal to withdraw the subpoenas prompted the filing of this Motion to Quash on October 23, 2019. *See* Mem. of Law at 5. Generally, counsel must move to quash before the subpoena's return date. *See Toole v. Cordovani*, No. 13-6720, 2014 WL 132002, at *2 (D.N.J. Jan. 2014); *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) ("[I]t is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled deposition."). The Court excuses the delay for four reasons: (1) the subpoenas, which were served approximately two weeks and one week before the return date, did not provide a reasonable time to comply given the breadth of the

applicable exception or waiver. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The party seeking to quash or modify a subpoena must demonstrate that Rule 45's requirements are satisfied. *Strike 3 Holdings, LLC v. Doe*, No. 18-16593, 2019 WL 4745360, at *3 (D.N.J. Sept. 30, 2019). "An undue burden exists when 'the subpoena is unreasonable or oppressive.'" *Id.* at *5 (quoting *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011). Courts consider the following factors to determine the reasonableness of a subpoena:

> (1) the party's need for the production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed party.

*Id.* (quoting *In re Lazardis*, 865 F. Supp. 2d at 524).

In addition, "[d]iscovery sought via subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b)." *Conforti v. St. Joseph's Healthcare Sys., Inc.*, No. 17-50, 2019 WL 3847994, at *2 (D.N.J. Aug. 15, 2019) (quoting *Gov't Employees Ins. Co. v. Trnovski*, No. 16-4662, 2018 WL 5281424, at *2 (D.N.J. Oct. 23, 2018)). Rule 26(b)(1) prescribes the scope and limits of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

requests that involving the production of financial records and communications concerning foreign entities, *cf.* Fed. R. Civ. P. 45(d)(3)(A)(i); (2) the decision to consider an untimely motion falls within the Court's discretion, *see Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 320 (S.D.N.Y. 2018); (3) the Nonparties attempted to meet and confer regarding the subpoenas; and (4) neither Plaintiff nor Defendant raises the issue of timeliness.

9

*See also* Fed. R. Civ. P. 26(b)(2)(c) (demanding that "the court must limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "is outside the scope permitted by Rule 26(b)(1)"). "Generally, courts afford greater protection to non-parties in discovery, and nonparty subpoenas must meet a higher standard of relevance than subpoenas directed toward parties." *Conforti*, 2019 WL 3847994, at *2; *accord Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990).

The Nonparties assert that the subpoenas "should be quashed because they are unduly burdensome . . . and will not reasonably result in the production of evidence relevant to the claims set forth in this case." Nonparties' Mem. of Law at 5. The Court agrees in part. Setting aside the familial history that likely spurred the filing of this lawsuit, the crux of this civil action is whether Defendant's communications to employees of Christie's auction house in the beginning of 2018 regarding Plaintiff's theft of artwork are tantamount to defamation and tortious interference with a prospective business relationship. *See* Compl. ¶¶ 24-35. Subsumed in the Complaint is Plaintiff's further allegation that Defendant also made defamatory comments to the Nonparties regarding certain unspecified "shameful" conduct. *See id.* ¶¶ 13-14, 25. Defendant contests the defamation claims by asserting that her statements were in fact true. With that backdrop in mind, the Court first assesses the relevancy of the material sought before turning to the proportionality of the discovery relative to the parties' needs, among other considerations.

1. **Relevance**

The Court finds that the categories that pertain to expenses, loans, and other transactions involving Plaintiff may be relevant as to whether Plaintiff legitimately acquired the artwork in exchange for settlement of his debts. The parties may need discovery pertaining to Plaintiff's

financial history with his mother in order to resolve the defamation claim; that is, whether Plaintiff received the artwork as reimbursement for past expenses, or purloined it. Plaintiff attests that he was reimbursed through Abacat and Raglos directly, which renders those transactions relevant. *See* Pl.'s Decl. ¶¶ 4-5. The Court also notes that Plaintiff has alleged that Defendant made defamatory remarks directly to the Nonparties, which places those communications in issue. *See id.* ¶ 8; Compl. ¶¶ 13-14.

Whether Plaintiff stole art from Mrs. Brodsky is a fact in issue; what is not in issue, and is therefore irrelevant, are the categories seeking all documents pertaining to the Foundations and the other entities' financial transactions, financial statements, audit files, formation and management agreements. *See* Katz Decl., Ex. A ¶¶ 1-25, 48. The Court also finds the Nonparties' compensation to be irrelevant to the claims in issue. *See id.* ¶ 34. In short, it is unclear to the Court why the parties need the Foundations' formation and financial documents to prove or defend against the defamation and tortious interference claims in this case. Indeed, the parties concede that they seek the Foundations' documents in part to confirm whether they will execute a general release and indemnification agreement in favor of the Nonparties in order to receive their distributions from Abacat. *See* Pl.'s Decl. ¶¶ 10-11.

Similarly, the parties do not need any discovery pertaining to financial transactions involving the other siblings. For example, it is irrelevant whether "a loan was made to Defendant through the financing of [Mrs. Brodsky] and Larry's assets," Pl.'s Decl. ¶ 6, or whether Plaintiff is owed money from siblings directly, *see id.* ¶ 7. Neither Plaintiff nor Defendant has explained how those records are relevant, even under the most indulgent reading of Rule 26, to whether Plaintiff legitimately acquired the artwork in exchange for settlement of his debts. All documents pertaining to transfers of property or real estate and to loans to or from Vivian, Steven, and Larry

have no probative value as to whether Richard stole artwork from his mother. *See* Katz Decl., Ex. A ¶¶ 44-46, 49(b)-(d), 50(b)-(d), 52-55. The Court will also quash the catch-all requests as overly broad. *See id.* ¶¶ 26-27, 56.

To recapitulate, the relevant communications and documents include any loans to Plaintiff, debts owed to Plaintiff by the Foundations on behalf of the parties' mother, all distributions to date to Plaintiff from Foundations, all documents concerning the transfer of artwork to the children, all documents pertaining to the transfer of money or property to Plaintiff, all documents concerning Plaintiff's real property transactions, and all communications between Defendant and the Nonparties concerning Plaintiff. The relevant categories are Categories Twenty-Eight through Thirty-One but limited only to the debts owed to Plaintiff and the disposition of assets as to him; Category Thirty-Two but limited only to communications concerning Plaintiff; Category Thirty-Three; Category Thirty-Five (a); Categories Thirty-Six through Forty-Three; Category Forty-Nine (a); Category Fifty (a); and Category Fifty-One. Finally, the Court finds Category Forty-Seven relevant insofar as it pertains to the Nonparties' communications concerning Plaintiff.

2. **Undue Burden and Proportionality**

As to the hardship imposed on the Nonparties in conjunction with the categories of documents that the Court has identified as relevant, the Court finds the narrowed universe of documents does not impose an undue burden on the Nonparties in proportion to Plaintiff and Defendant's need for the discovery. The Court nonetheless expects the parties to meet and confer regarding the most cost and time effective way for the Nonparties to comply with the parts of the subpoena that survive scrutiny.

Finally, the Court rejects the Nonparties' assertion of privilege. In order to withhold information based on a claim of privilege, Rule 45(e)(2)(A) expressly mandates that the proponent

of the privilege must "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(i)-(ii). The Court finds that the Nonparties have not described the nature of the documents subject to any putative privilege with sufficient specificity to allow this Court to rule on that objection to the production to those documents. Although Mr. De Vos served as Mrs. Brodsky's attorney for certain legal matters, counsel for the Nonparties clarified at oral argument that Mr. De Vos did not act in a legal capacity with respect to the administration of the trusts. In responding to the subpoenas, the Nonparties may assert privilege over the documents they seek to withhold from production in conjunction with the preparation of a sufficient privilege log.

The same holds true with respect to the Nonparties' assertion of Curacao law forbidding any discovery regarding the Foundations. The Nonparties have only provided this Court with broadest level of generality as to the workings of a Curacao private foundation. If the production of particular documents would place the Nonparties at risk of violating some foreign law, they may so indicate by way of a timely written objection to the modified subpoena.

## IV. CONCLUSION

For the reasons stated herein, non-parties Lloyd De Vos, Esq. and Ann Pincus Berman, Esq.'s Motion to Quash Plaintiff and Defendant's Jointly Served Subpoenas is granted in part and denied in part. An appropriate order will follow.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: March 26, 2020